993 F.2d 887
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Enrique VILLEGAS-SALAZAR, Defendant-Appellant.
 No. 90-50381.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 8, 1993.*
Decided May 6, 1993.
 
 1
 Before NOONAN and LEAVY, Circuit Judges, and FITZGERALD,** Senior District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 On December 7, 1989, a white Ford sedan driven at normal speed by a lone male went by United States Border Patrol Agent Searles as he sat in his patrol car on the meridian of Interstate 8 between El Centro and San Diego, California observing westbound traffic. His report indicates that the driver of the sedan did not acknowledge the presence of the Border Patrol agents. Agent Searles decided to follow the sedan. His report indicates that the sedan sank "in a heavy manner as it traveled over normal bumps" and that two other vehicles driven by lone Hispanic drivers followed the sedan at a similar and consistent speed. On the basis of these observations and the reputation of this area of Interstate 8 for drug and alien smuggling, Agent Searles called for assistance and executed a coordinated stop of all three vehicles. The sedan was driven by defendant and appellant Enrique Villegas-Salazar. Agent Searles approached the car and examined the immigration documents handed to him. He noticed the smell of marijuana. He asked appellant if he could look in the trunk. Appellant shrugged visibly and opened the trunk to reveal a large amount of marijuana in bales. Agent Searles placed appellant under arrest.
 
 
 4
 An indictment returned on December 20, 1989 charged appellant with one count of possession of approximately 167.27 kilograms of marijuana with the intent to distribute it. Appellant filed a motion to suppress evidence. On March 5, 1990, a superseding information was filed charging appellant with possession with intent to distribute 99 kilograms of marijuana and a guilty plea hearing was held before United States District Judge William B. Enright. The agreed amount of 99 kilograms along with a determination of acceptance of responsibility brought the guidelines penalty range for the charge down to 46 to 57 months. After addressing the defendant personally, the district court accepted the waiver of indictment and plea of guilty to the superseding information. On May 14, 1990, appellant was sentenced to 46 months imprisonment followed by three years of supervised release. A final judgment was entered the following day.
 
 
 5
 On May 23, 1990, appellant filed a timely notice of appeal. However, appellant's retained trial counsel failed to order the transcripts or prosecute the appeal. In October of 1990, without explanation, trial counsel sent appellant a stipulation of voluntary dismissal of his appeal. From October 1990 until February 1991, appellant wrote a number of increasingly distressed letters requesting information on his case. The available record does not disclose any response to appellant's requests. On February 20, 1991, trial counsel filed a one-page Anders brief and on May 8, approximately one year after the notice of appeal, notified his client that he intended to withdraw from the case. On December 18, the court appointed new counsel for appellant. On June 15, 1992, after first appointed counsel failed to meet two separate deadlines to file the opening brief and excerpts of record, the court on its own motion sanctioned and relieved first appointed counsel from the case. Second appointed counsel filed the opening brief and excerpts of record on November 3, 1992, an approximately two and a half year delay. This appeal was submitted on April 8, 1993, approximately three years after the filing of the notice of appeal.
 
 ANALYSIS
 I. INVOLUNTARY GUILTY PLEA
 A. Standard of Review
 
 6
 The voluntariness of a guilty plea is subject to de novo review. United States v. Zweber, 913 F.2d 705, 710 (9th Cir.1990); Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir.1986) (noting prior confusion in circuit). The voluntariness of a guilty plea is determined solely from the record of the plea proceedings. United States v. Graibe, 946 F.2d 1428, 1435 (9th Cir.1991).
 
 B. Discussion
 
 7
 1. Involuntary Guilty Plea Raised for the First Time on Appeal
 
 
 8
 As a general rule, we will not address issues raised for the first time on appeal. Bolker v. Commissioner of Internal Revenue, 760 F.2d 1039, 1042 (9th Cir.1985). Three exceptions exist. We have the discretion to address the new issue if; 1) review is necessary to avoid a miscarriage of justice, 2) a change in the law relevant to the new issue occurs after argument below, or 3) the new issue is a question of law based on a fully developed factual record. Appellant consistently attempted to assert his rights and was unable to do so because of the inattention of counsel. Because the voluntariness of a guilty plea is reviewed de novo based only on the plea hearing, the question reduces to an application of settled law to established facts based on a fully developed record. In United States v. Rubalcaba, 811 F.2d 491, 493 (9th Cir.) cert. denied, 484 U.S. 832 (1987), we found that an involuntariness challenge to a guilty plea did not fall into any of the three Bolker exceptions. There, the delay could have prejudiced the government's case. In the present case, there is no prejudice to the government because the determination of the voluntariness of a guilty plea is based solely on the record. We therefore reach the merits of appellant's claim that his guilty plea was involuntary.
 
 
 9
 2. Rule 11 Requirements for a Voluntary Guilty Plea
 
 
 10
 Rule 11 seeks to insure that the courts accept only knowing and voluntary guilty pleas by requiring that the court address the defendant in open court and inform the defendant of and determine that the defendant understands certain rights, the first of which is the nature of the charge. After all of the requirements of the rule are met, the district court must make a determination based on all of the evidence that there is a factual basis for the plea and that the plea is voluntary. Appellant argues that his plea was not voluntary because the district court failed to adequately inform him of the charges against him. Specifically, appellant contends that an allegedly ambiguous response by the appellant required the district court to further clarify the nature of the charges.
 
 
 11
 We conclude that the district court satisfied all of the requirements of Fed.R.Crim.Pro. 11(c). The district court informed appellant of the following: the maximum possible penalty including a discussion of supervised release; that the sentencing guidelines apply and that the court may depart from those guidelines under certain circumstances; the right to plead not guilty and receive a jury or bench trial; the right to counsel; the right to confront and cross-examine witnesses; the right to be free from self-incrimination; that a guilty plea waives the right to a trial; and that Appellant's statements under oath may be used against him in a prosecution for perjury. Even more, the record shows that the district court diligently and carefully fulfilled the fundamental duty imposed by Rule 11 to determine that a guilty plea is made voluntarily. The district court established that the elements of the crime were satisfied and no meritorious defenses or constitutional challenges existed to the charge. The district judge carefully explained the practical effect of the right to be free from self-incrimination, examined appellant on his age and level of education, asked appellant if he had used drugs or medication in the last three days, clarified the difference between jury and bench trials, and made a finding that appellant's physical condition and demeanor supported the determination that the guilty plea was voluntary.
 
 
 12
 3. The Explanation of the Nature of the Charge
 
 
 13
 Despite careful explanation and examination by the district court, appellant argues that his initial ambiguous response to one of the questions posed leads to the conclusion that his guilty plea was involuntary. We disagree. At the start of the hearing, the clerk of the court informed appellant that he was charged with "one count of possession of a controlled substance with intent to distribute." Later, the following occurred,
 
 
 14
 THE COURT: I would advise you that you are charged with possession of a controlled substance with intent to distribute.
 
 
 15
 Do you understand that to be the charge?
 
 
 16
 THE DEFENDANT: Yes.
 
 
 17
 Still later, the interchange upon which appellant bases his argument occurred.
 
 
 18
 THE COURT: Do you have a clear understanding of both the charge against you and the consequences of you [sic] plea?
 
 
 19
 THE DEFENDANT: I think I understand.
 
 
 20
 THE COURT: Do you have a clear understanding of both the charge against you and the consequences of your plea of guilty?
 
 
 21
 THE DEFENDANT: Yes.
 
 
 22
 The district court then inquired into the factual basis for the plea. Appellant's trial counsel, Mr. Espinosa, stated that appellant knew that he was transporting marijuana and intended to deliver it to another party. The court then asked appellant to confirm Espinosa's statements.
 
 
 23
 THE COURT: You heard what your lawyer said about your activities.
 
 
 24
 Is that true and correct in all respects, sir?
 
 
 25
 THE DEFENDANT: Yes.
 
 
 26
 4. Analysis of the Explanation of the Nature of the Charge
 
 
 27
 The voluntariness of a guilty plea is determined from evidence of the subjective understanding of the defendant at the time of the plea. United States v. Rivera-Ramirez, 715 F.2d 453, 457 (9th Cir.1983), cert. denied, 467 U.S. 1215 (1984). The explanation must be sufficient to assure that the plea is voluntary in light of the complexity of the charge, the age and experience of the defendant, and whether he or she is represented by counsel. United States v. Kamer, 781 F.2d 1380, 1385 (9th Cir.), cert. denied, 479 U.S. 819 (1986).
 
 
 28
 In Henderson v. Morgan, 426 U.S. 637, 647 (1976), the Court ruled that a defendant must have adequate notice of the offense for a guilty plea to be constitutionally valid. A mentally-retarded defendant pled guilty to second-degree murder without being informed that an intent to kill was an element of the crime. The Court found the factual situation in Henderson to be "unique" because there was "no reference of any kind to the requirement of intent to cause the death of the victim" and the defendant's retardation made it unlikely that he understood this element of the crime. Id. at 643; see United States v. Lewis, No. 92-50384, slip op. at 3451 (9th Cir. April 9, 1993) (evidence of incompetency to make guilty plea must be sufficient to give a reasonable judge a genuine doubt). In a subsequent case decided under Constitutional rather than Rule 11 standards, the Court indicated that it may be appropriate to assume that a person with ordinary intelligence would be familiar with the charges in the indictment. Marshall v. Lonberger, 459 U.S. 422, 437 (1983) ("Under Henderson, respondent must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted.") In the present case, the name of the crime itself gives notice that the intent to distribute is part of the crime. The district court repeated the charge including the intent element a number of times and confirmed the factual basis for a finding of intent to distribute.
 
 
 29
 Appellant attempts to analogize the present case to a number of cases requiring a trial court to explain the intent element of the crime to the defendant. Where the crime is complex or the intent element has a nontraditional definition, a trial judge may be required to confirm that the defendant has a particular understanding of the intent element. United States v. Kamer, 781 F.2d 1380, 1385-1986 (9th Cir.) cert. denied, 479 U.S. 819 (1986) (specific intent element in complex fraud case); United States v. Bruce, 976 F.2d 552 (9th Cir.1992) (aiding and abetting a conspiracy to possess a controlled substance with the intent to distribute it); see United States v. Bernal, 861 F.2d 434, 438 (5th Cir.1988) cert. denied, 493 U.S. 872 (1989) (complete failure to discuss conspiracy charge on the record was reversible error). A number of cases hold that the malice element of second degree murder should be given a more detailed explanation by the trial court to confirm that the defendant knows that he or she is admitting to an intentional killing. United States v. Bigman, 906 F.2d 392 (9th Cir.1990); Williams v. Raines, 783 F.2d 774 (9th Cir.1986); Hayes v. Kincheloe, 784 F.2d 1434 (9th Cir.1986) cert. denied, 484 U.S. 871 (1987). In complex cases or crimes involving the legal concept of malice, a discussion of the mens rea may be required for a defendant to understand "the nature of the charge to which the plea is offered." Fed.R.Crim.Pro. 11(c)(1). In the present case, appellant was represented by counsel at the hearing and was of sufficient age and experience to understand the charge. The trial court inquired into the specific factual bases for the charge. Appellant confirmed his attorney's statement that appellant knew he was in possession of marijuana and intended to give the marijuana to another. The important elements of the crime, that appellant possessed the marijuana and intended to deliver it to another person, were not so complex or nonintuitive that either the Constitution or Rule 11 required a more detailed inquiry by the court.
 
 
 30
 Finally, the record does not support appellant's additional arguments that he may have thought he had a valid claim to suppress evidence, that he may have been confused by the reduction of the amount of marijuana charged to 99 kilograms, that the use of an interpreter may have caused him to misunderstand, or that the district court incorrectly based its voluntariness determination solely on appellant's demeanor. Rather, the record shows that the contrary is true in each instance. Trial counsel explicitly stated that no meritorious defenses existed. Appellant's answers are consistent and show no indication of confusion or misunderstanding. The district court assessed appellant's demeanor to support not substitute for appellant's responses on the record. "Argument is not evidence of the defendant's subjective understanding, and thus does not establish prejudice." United States v. Rivera-Ramirez, 715 F.2d 453, 457 n. 4 (9th Cir.1983) cert. denied, 467 U.S. 1215 (1984).
 
 5. Conclusion on Guilty Plea
 
 31
 The guilty plea in the present case was voluntary in both an actual and a constitutional sense. See Henderson v. Morgan, 426 U.S. 637, 645 (1976).
 
 II. DUE PROCESS
 A. Standard of Review
 
 32
 The record of the delays in this case are undisputed and the law is established. The question of a due process violation from appellate delay in this case is therefore a mixed question subject to de novo review. United States v. McConney, 728 F.2d 1195, 1205 (9th Cir.) (en banc) cert. denied, 469 U.S. 824 (1984) (constitutional mixed question of exigent circumstances reviewed de novo ).
 
 B. Discussion
 
 33
 This circuit has adopted a four-factor test to evaluate a claim of due process violation from extreme appellate delay: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant." United States v. Antoine, 906 F.2d 1379 (9th Cir.) cert. denied, 498 U.S. 963 (1990). In Antoine, the court found that a three-year delay substantially caused by the insouciance of the court reporter satisfied the first factor. While impermissible appellate delay is not to be "quantified into a specified number of days or months", Barker v. Wingo, 407 U.S. 514, 523 (1972), the two and a half year delay while the defendant served a three year and ten month sentence was excessive in the present case. Appellant also satisfies the second and third factors because he was not responsible for the delay and vigorously attempted to assert his rights. Coe v. Thurman, 922 F.2d 528, 531-32 (9th Cir.1990). However, appellant cannot show legal prejudice from the delay.
 
 
 34
 An analysis of prejudice from appellate delay considers: (1) the oppressive or unjustified nature of incarceration pending appeal, (2) appellant's anxiety and concern pending appeal, (3) the impairment of appellant's prospects on appeal or retrial. Id. at 1382; see Barker v. Wingo, 407 U.S. 514 (1972) (establishing these general factors for analysis of pretrial delay). The last factor is the most important. Coe, 922 F.2d at 532. Because appellant's plea was voluntary and he has submitted no evidence that his confinement was peculiarly oppressive, his incarceration does not meet the first prejudice factor. Similarly, appellant "has not alleged ... any particular anxiety suffered ... that would distinguish his case from that of any other prisoner awaiting the outcome of an appeal." Antoine, 906 F.2d at 1383.
 
 
 35
 Appellant contends that his "meaningful avenues of appellate review have been narrowed," that "he might have sought collateral review," that it is now "difficult to develop facts pertinent to ... the motion to suppress," and that a prejudicial "communications void" existed towards his counsel. None of these allegations are sufficient to support a finding of prejudice. The mere passage of time is not sufficient. As the court noted in United States v. Chavez, 979 F.2d 1350, 1355 (9th Cir.1992).
 
 
 36
 [A]ny dimming of the memories of the Government's witnesses prejudices the prosecution, not the defense. Chavez asserts that his efforts to locate potentially exculpatory evidence has been severely curtailed. He has failed, however, to give any indication of what new evidence may now be available that was not within his knowledge prior to trial.
 
 
 37
 Because the defendant could not point to a specific area of prejudice from the delay, the court in Chavez found that he had not shown a violation of his due process rights. See Meador v. Knowles, No. 91-16048, slip op. at 3497 (9th Cir. April 8, 1993). Appellant has not indicated any source of prejudice to his appeal. Rather, appellant has raised only the voluntariness of his guilty plea. Any other defenses necessarily depend on a withdrawal of the guilty plea. We conclude that appellant has not been prejudiced by the excessive delay.
 
 III. INEFFECTIVE ASSISTANCE OF COUNSEL
 A. Standard of Review
 
 38
 Whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-90 (1984).
 
 B. Discussion
 
 39
 Claims of ineffective assistance of counsel should usually be raised by collateral attack under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Bosch, 951 F.2d 1546, 1549 (9th Cir.1991) cert. denied, 112 S.Ct. 2975 (1992). A habeas attack allows the district court to develop a complete record to assess the conduct of the attorney and the possible prejudice. United States v. Molina, 934 F.2d 1440, 1446 (9th Cir.1991). However, where there is a sufficient factual record to evaluate the claims, an appellate court should consider the claim. Id; United States v. Mal, 942 F.2d 682, 689 (9th Cir.1991). This is particularly true in the present case because of the appellate delay and the fact that appellant has served a major part of his sentence. Because the determination of the voluntariness of the plea is made solely from the Rule 11 transcript, this court has a sufficient factual record to rule on the claim on direct appeal. The record on this issue would not become any more developed. It would serve no just end to now force appellant to raise the claim on a separate collateral attack. Trial counsel and first appointed counsel were ineffective in prosecuting appellant's appeal. They did essentially nothing. But, like the delay considered for due process purposes, the ineffective assistance did not prejudice the defendant in a legal sense. His arguments that his guilty plea was involuntary have been considered and rejected.
 
 CONCLUSION
 
 40
 While the delay in the present case is disappointing, it was not prejudicial to appellant. His claim that his guilty plea was involuntary has been considered and rejected.
 
 
 41
 The decision of the trial court is AFFIRMED.
 
 
 
 *
 This case is appropriate for submission on the briefs and without oral argument per Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3